IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| TERAN L. DENTON, | ) | CASE NO. BK15-40452 |
| | ) | |
| Debtor(s). | ) | CHAPTER 13 |

<u>ORDER</u>

Hearing was held on June 24, 2015, on the debtor's objection to the claim of the United States Department of Agriculture's Rural Housing Service ("RHS") (Fil. No. 10). David P. Lepant appeared for the debtor and Laurie M. Barrett appeared for the RHS. The parties have filed post-hearing briefs and the matter is now ready for decision.

The debtor and her former husband borrowed $17,530.00 from the RHS on December 21, 2001, to buy a home in Washington County, Kansas. The promissory note is for a term of 33 years and is secured by a mortgage on the home. The mortgage document was filed in the county records and is a first lien on the property. The debtor and her husband dissolved their marriage in 2004. The divorce decree filed in Washington County, Kansas, on October 13, 2004, awarded the subject real estate and the debt owed on it to the debtor's former husband.

The debtor filed a Chapter 7 bankruptcy petition in Nebraska on July 27, 2006, at Case No. BK06-40911. Because the debtor did not believe she was liable on the RHS debt, she did not list the debt or RHS in her bankruptcy schedules and creditor matrix. As a result, RHS did not receive notice of that bankruptcy case. The bankruptcy estate had no assets from which creditors could be paid, so no deadline for filing proofs of claim was set. The debtor received a discharge on November 13, 2006, and the case was closed on November 20, 2006.

The debtor also filed a Chapter 13 bankruptcy petition on March 2, 2012, at Case No. BK12-40419. Again, RHS was not listed as a creditor and its debt was not included in the bankruptcy schedules. The debtor's plan was confirmed on May 20, 2012, but the case was dismissed on October 21, 2014, when the debtor defaulted on her plan payments.

According to RHS's evidence, payments on the RHS loan became delinquent in 2013. RHS accelerated the note and demanded payment in full on March 28, 2014. RHS subsequently obtained the debtor's federal income tax refund of $5,565.68 on March 12, 2015, via the Treasury Department's Offset Program. The debtor filed a Chapter 13 bankruptcy petition on March 24, 2015, in which she noted the seizure of her tax refund and listed the government as a creditor. The RHS filed a proof of claim in the amount of $21,723.18 for amounts due under the promissory note secured by the mortgage.

The debtor's Chapter 13 plan did not provide for this creditor at all, but she subsequently amended the plan to include a provision surrendering her interest, if any, in the Kansas real estate. That plan (Fil. No. 22) was confirmed on June 26, 2015.

The debtor objects to the claim on two grounds: first, that the real estate was awarded to her former husband in the divorce so she no longer has any legal or equitable interest in the property, and second, that the debt was discharged in the debtor's 2006 Chapter 7 bankruptcy case.

The decree of divorce, placed in evidence by the debtor, is legally enforceable as between the debtor and her former husband with regard to the property settlement provisions it contains. However, the decree by itself is insufficient to transfer interests in real property or release the debtor from her contractual obligation to RHS to pay the promissory note. Additional steps, such as the execution of a deed transferring the debtor's interest in the Kansas property to her former husband, and the refinancing of the mortgage loan to remove the debtor's name, would be necessary to carry out the provisions of the divorce decree. There is no evidence before the court that any such steps were taken. As it stands, the debtor remains "fully and personally obligated to keep all of the promises made in [the] note, including the promise to repay the full amount owed" after the divorce. Promissory Note, at 3 (Claim No. 7-1, at 22).

Therefore, at the time the debtor filed her 2006 bankruptcy case, she continued to hold an ownership interest in the Kansas property, and she was liable to the RHS on the home loan. The discharge in that case discharged her from all of her pre-petition debts *except as provided in section 523*. 11 U.S.C. § 727(b) (emphasis added). Section 523 lists the exceptions to discharge, including any debt that is "neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit" the timely filing of a proof of claim and possible request for a determination of the dischargeability of such debt. § 523(a)(3). Because this debt was not listed in the debtor's schedules and notice was not given to RHS, this debt was not discharged in the Chapter 7 case.

When a Chapter 7 debtor neglects to list a creditor prior to discharge and closure, the case is often reopened at the debtor's request to add the creditor and deal with the debt. § 350(b) ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."). "The act of reopening a closed bankruptcy case is typically ministerial and presents a limited range of issues, including whether further administration of the estate appears to be warranted." *Apex Oil Co., Inc. v. Sparks (In re Apex Oil Co., Inc.)*, 406 F.3d 538, 543 (8th Cir. 2005) (citing *Lopez v. Specialty Restaurants Corp. (In re Lopez)*, 283 B.R. 22, 26 (B.A.P. 9th Cir. 2002)). However, a dischargeability complaint can be filed without reopening the bankruptcy case because an adversary proceeding is an entirely separate matter. *Goldstein v. Diamond (In re Diamond)*, 509 B.R. 219, 222 (B.A.P. 8th Cir. 2014).

While courts routinely grant motions to reopen, the decision to do so is discretionary, and the party moving to reopen the case must demonstrate cause. *Arleaux v. Arleaux*, 210 B.R. 148, 149 (B.A.P. 8th Cir. 1997); *In re Wilson*, 492 B.R. 691, 694-95 (Bankr. S.D.N.Y. 2103), *cited with approval in Pennington-Thurman v. Bank of Am. N.A. (In re Pennington-Thurman)*, 499 B.R. 329, 331 (B.A.P. 8th Cir. 2013). Factors to consider when determining whether cause exists include:

(1) the length of time that the case was closed;

>  (2) whether a nonbankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case;
>  (3) whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum;
>  (4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen;
>  (5) the extent of the benefit to the debtor by reopening; and
>  (6) whether it is clear at the outset that no relief would be forthcoming to the debtor by granting the motion to reopen.

*Wilson*, 492 B.R. at 695 (citing *In re Otto*, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004)).

The length of time since the Chapter 7 case was closed, the prejudice to both parties as well as the benefit to the debtor, and the question of futility are the most salient factors to consider in this instance.

The length of time a case has been closed is important because the parties' positions change over time as the parties go forward:

> [T]he time of reopening of an estate is of crucial significance. . . . [I]t must be borne in mind that re-opening defeats one of the major purposes of the Bankruptcy Act; to stabilize an insolvent debtor's financial position at the time of the filing of the petition, to relieve him of his existing financial burdens, and to provide his then assets for the relief of his creditors. Re-opening removes the element of certainty from the adjudication and settlement of the estates. It is as essential to the creditors as it is desirable to the bankrupt that this element of certainty be destroyed only for the most compelling cause. Accordingly as the time between closing of the estate and its re-opening increases, so must also the cause for re-opening increase in weight.

*Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir. 1962). *See also Mid-City Bank v. Skyline Woods Homeowners Ass'n (In re Skyline Woods Country Club, LLC)*, 431 B.R. 830, 835 (B.A.P. 8th Cir. 2010) (quoting *Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538, 543 (8th Cir. 2005) ("[t]he longer the time between the closing of the estate and the motion to reopen . . . the more compelling the reason for reopening the estate should be")).

Generally, the types of prejudice suffered by a creditor that are severe enough to warrant a refusal to reopen a case are the loss of the creditor's right to participate in a distribution and the loss of the creditor's right to obtain a determination of dischargeability. *In re Dodge*, 133 B.R. 654, 656-57 (Bankr. W.D. Mo. 1991).

The prejudice to the debtor of not reopening the case is, of course, the failure to discharge this debt, and conversely, the benefit to her is the potential to dismiss a $21,000.00 debt that she maintains she does not owe.

The futility of reopening a case when it is clear that the debtor cannot obtain the relief sought is another reason not to grant a motion to reopen. *Pennington-Thurman*, 499 B.R. at 332; *Arleaux*, 210 B.R. at 149-50. This is the premise of the decision in the case of Peggy Jean Gonzalez, Case No. BK09-81123 (Oct. 20, 2011), cited by the debtor in her brief and oral argument. In *Gonzalez*, the debtor moved to reopen the Chapter 7 bankruptcy case to include a post-discharge judgment debt for damages that occurred pre-petition. The bankruptcy court denied the motion because it was a no-asset case, so the creditor did not lose its right to claim a distribution. However, the court recognized the creditor's right to seek a determination of the dischargeability of the debt and accordingly gave the creditor time to file an adversary proceeding.

Here, more than eight years passed between the debtor's Chapter 7 discharge and the filing of her present case. The debtor moved on with her life in the interim, believing her obligation on the debt to have been discharged. In that time, the loan became delinquent and RHS took steps to collect a portion of the amount due from an ancillary source, that being the debtor's tax refund before it was transferred to the debtor. While there was no distribution in the Chapter 7 case for RHS to share in, RHS was prejudiced by not being able to litigate the dischargeability of the debt in a timely manner. Clearly, the failure to determine, before now, whether this debt was discharged has been detrimental to both parties.

Although there was no distribution of assets in the debtor's Chapter 7 case, RHS is still entitled to its right to obtain a determination of the dischargeability of the debt. The Chapter 7 case need not be reopened for that purpose, *Diamond*, 509 B.R. at 222, but the creditor should be given an opportunity to file an adversary proceeding under § 523.

IT IS ORDERED: The debtor's objection to the claim of the United States Department of Agriculture's Rural Housing Service (Fil. No. 10) is denied. The creditor may file an adversary proceeding to determine dischargeability on or before September 22, 2015.

DATED:  July 23, 2015.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *David. P. Lepant
    Laurie M. Barrett
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.